IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:25-CR-1 |
| | ) |
| CHESAPEAKE REGIONAL MEDICAL CENTER, | ) |
| | ) |
| a/k/a CHESAPEAKE GENERAL HOSPITAL, | ) |
| | ) |
| a/k/a CHESAPEAKE REGIONAL HEALTHCARE | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S SURREPLY TO**
**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

The United States of America, by and through its attorneys, Erik S. Siebert, United States Attorney, and E. Rebecca Gantt and Elizabeth M. Yusi, Assistant United States Attorneys, now files this surreply to the defendant CHESAPEAKE REGIONAL MEDICAL CENTER ("CRMC")'s Reply in Support of Its Motion to Dismiss the Indictment. ECF No. 24. The Court granted the government leave to file a surreply to address defendant's argument that even if it is a municipal corporation, it is not a "person" within the meaning of the relevant criminal statutes. ECF No. 27.

In its motion to dismiss, defendant contended the indictment should be dismissed because, in relevant part, as "a sovereign arm of the Commonwealth of Virginia, it cannot constitute a 'person' subject to criminal liability under [18 U.S.C.] section 371 and 1347." ECF No. 13 at 9. Then, in its reply to the government's opposition brief, defendant additionally

argued that even if not an arm of the state but instead a municipal entity, it is also not a "person." ECF No. 24 at 2–5. This argument is unsupported by the plain language of the relevant statutes or relevant precedent.

As defendant concedes, the Dictionary Act, 1 U.S.C. § 1, is applicable. ECF No. 24 at 3. "In assessing the meaning of a statutory term, [a court] is necessarily guided by the provisions of the Dictionary Act." *United States v. Bly*, 510 F.3d 453, 462 (4th Cir. 2007). "[T]he Supreme Court has applied the Dictionary Act's definition of the term 'person' to the statutes defining criminal offenses in Title 18 of the United States Code." *Id.* (citing *United States v. A & P Trucking*, 358 U.S. 121 (1958)). As relevant here, the Dictionary Act provide that "the words 'person' and 'whoever' include *corporations*, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1 (emphasis added). This shows that 18 U.S.C. §§ 371 and 1347 apply to defendant, for the Supreme Court has long recognized that "[a] municipal corporation is a corporation in the usual sense of the term." *City of Lincoln, Neb. v. Ricketts*, 297 U.S. 373, 374 (1936).

In arguing that it is nonetheless not a "person," defendant again resorts to inapplicable Virginia sovereign immunity law, citing a Fourth Circuit case that was applying *Virginia* law for the question of when municipal corporations enjoyed state sovereign immunity. ECF No. 24 at 3 (citing *Massey v. Virginia Polytechnic Inst. & State Univ.*, 75 F.4th 407 (4th Cir. 2023)). But as the government explained in its opposition, "just because a person or entity has a defense or immunity under state law does not mean it can claim federal-law sovereign immunity." *Glob. Innovative Concepts, LLC v. State*, 105 F.4th 139, 142 (4th Cir. 2024).

2

Defendant also candidly acknowledges that "courts have held that local governments are 'persons' within the meaning of *some* statutes, such as the False Claims Act and 42 U.S.C. § 1983." ECF No. 24 at 3. However, it claims that the Supreme Court requires a clear showing of legislative intent in the relevant statue in order for the term "person" to apply to a municipal corporation. *Id.* at 3–4. While this may be true for state sovereign entities, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000), where the relevant statute must clearly abrogate a state's sovereign immunity, the same presumption does not apply to municipal corporations. Instead, the Supreme Court looks to whether the term "person" was generally understood to include municipal corporations at the time of the enactment of the statute in question, and has repeatedly held that municipal corporations are "persons." *See, e.g.*, *Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 125–29 (2003); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 688 (1978). *Cf. Lippoldt v. Cole*, 468 F.3d 1204, 1214–15 (10th Cir. 2006).

Starting with 18 U.S.C. § 371, the first version of that statute was enacted in 1909. *See* https://uscode.house.gov/view.xhtml?req=(title:18%20section:371%20edition:prelim). The predecessor version similarly applied where "two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose." 35 Stat. 1096, ch. 321, § 37 (Mar. 4, 1909). Particularly relevant is the Supreme Court's decision in *Monell*, which held that the term "person" in the Civil Rights Act of 1871—enacted four decades before 18 U.S.C. § 371—included municipal corporations. 436 U.S. 658. It emphasized that "by 1871, it was well understood that corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis." 436 U.S. at 687. It also looked to the 1871 version of the Dictionary Act, when then provided that "the word

'person' may extend and be applied to bodies politic and corporate." *Id.* at 688. Further, it noted that by 1869, "municipal corporations were routinely sued in the federal courts and this fact was well known to Members of Congress." *Id.* Thus, *Monell* concluded that by using the word "person," the "plain meaning" of the statute in question applied to municipal corporations. *Id.* at 689.

The other statute charged in the indictment, 18 U.S.C. § 1347, was enacted in 1996. Pub. L. 104-191, Title II, § 242(a)(1), Aug. 21, 1996, 110 Stat. 2016. *See also United States v. Mermelstein*, 487 F. Supp. 2d 242, 252 (E.D.N.Y. 2007). The Supreme Court's decision in *Chandler*, rendered in 2003, is illustrative. Although *Chandler* considered an 1863 statute, the False Claims Act, *Chandler* establishes that the common understanding that term "person" was generally understood to include municipal corporations persisted into the 21st century. In rejecting the argument that 1986 amendments to the False Claims Act implicitly amended the statute to remove municipal corporations from its coverage, the Supreme Court held that the purpose of the amendments was to address "fraud in modern times," and that "[i]t is simply not plausible that Congress intended to repeal municipal liability *sub silentio* by the very Act it passed to strengthen the Government's hand in fighting false claims." 538 U.S. at 133–34.

Indeed, *Chandler* shows why Congress did not immunize municipal corporations for fraud like that prohibited by the 18 U.S.C. § 1347: "Whatever municipal corporations may have been doing in 1863, in 2003 local governments are commonly at the receiving end of all sorts of federal funding schemes and thus no less able than individuals or private corporations to impose on the federal fisc and exploit the exercise of the federal spending power." *Chandler*, 538 U.S. at 129. Similarly, the purpose of the health care fraud statute, which was passed as part of the

4

Health Insurance Portability and Accountability Act of 1996, was to generally "combat waste, fraud, and abuse in health insurance and health care delivery." Pub. L. 104-191.

Defendant has not pointed to anything indicating Congress intended to exclude municipal corporations when it enacted 18 U.S.C. §§ 371 and 1347. It argues courts have rejected cases against "sovereign governmental unit[s]," but points only to cases involving the United States or its officers, or states and state agencies. ECF No. 24 at 4–5. As the government explained in its opposition brief, municipal corporations are simply not the "sovereign." *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001) ("Eleventh Amendment immunity does not extend to counties and similar municipal corporations. This is so, even if the counties and municipalities exercise a slice of State power." (citations and quotation marks omitted)).

While the government acknowledges it is not aware of a case applying criminal liability to a municipal corporation, it is also not aware of a case rejecting the government's authority to prosecute a municipal corporation, and the plain language of the criminal statutes at issue here clearly apply to municipal corporations. As the Supreme Court has emphasized in the antitrust context, "it has not been regarded as anomalous to require compliance by municipalities with the substantive standards of other federal laws which impose such sanctions upon 'persons.'" *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389 (1978).

It is also not unprecedented to prosecute governmental entities that, like defendant, lack sovereign immunity. In *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264 (2023), the Supreme Court rejected the argument that foreign sovereigns, in this case a bank that was majority-owned by the government of Turkey, were immune from criminal liability, noting the defendant's unsustainable position that "a purely commercial business that is directly and

5

majority-owned by a foreign state could engage in criminal conduct affecting U. S. citizens and threatening U. S. national security while facing no criminal accountability at all in U. S. courts." *Id.* at 277. Similarly, there is no reason to think Congress intended to exclude a hospital receiving a vast majority of its revenues from health care benefit programs, like any other private hospital, to be immune from liability for conspiracy to defraud the government and health care fraud.

Defendant also contends that it is somehow different from other municipal corporations like a city or county because it is "a state-created entity." ECF No. 24 at 3 n.2. But cities and counties are not created out of ether—just like defendant, they are formed by the Commonwealth. *See* Va. Const. § 2 ("The General Assembly shall provide by general law for the organization, government, powers, change of boundaries, consolidation, and dissolution of counties, cities, towns and regional governments."). This is so across the United States. *See* Garner, ed., Black's Law Dictionary, *County* (12th ed. 2024) ("Every county exists as a result of a sovereign act of legislation, either constitutional or statutory . . . ."); National Association of Counties, *What are counties?*, https://www.naco.org/page/what-are-counties (last visited Apr. 11, 2025) ("The organization and structure of today's 3,069 county governments are chartered under state constitutions or laws . . ."); *State of Louisiana ex rel. Folsom v. City of New Orleans*, 109 U.S. 285, 287 (1883) ("Municipal corporations are instrumentalities of the state for the convenient administration of government within their limits."). Thus, that defendant was created by state law does nothing to differentiate it from other municipal corporations.

For the reasons stated above and those in the government's opposition brief, the government submits that the Court should deny the motion to dismiss. Defendant requests an

evidentiary hearing, ECF No. 12, but has yet to point to any disputed and material factual matters. Thus, the government submits that no hearing is necessary.

Respectfully submitted,

ERIK S. SIEBERT
UNITED STATES ATTORNEY

By:     /s/
E. Rebecca Gantt
Virginia State Bar # 83180
Elizabeth M. Yusi
Virginia State Bar #91982
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address – Rebecca.Gant@usdoj.gov
E-Mail Address – Elizabeth.Yusi@usdoj.gov