IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) </br> ) </br> ) |
| v. | ) No. 2:25-CR-1 </br> ) |
| CHESAPEAKE REGIONAL MEDICAL CENTER, | ) </br> ) </br> ) |
| a/k/a CHESAPEAKE GENERAL HOSPITAL, | ) </br> ) </br> ) |
| a/k/a CHESAPEAKE REGIONAL HEALTHCARE | ) </br> ) </br> ) |
| Defendant. | ) </br> ) |

## SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANT'S "EMERGENCY" MOTION TO DISMISS

The United States of America, by and through its attorneys, Erik S. Siebert, United States Attorney, and E. Rebecca Gantt and Elizabeth M. Yusi, Assistant United States Attorneys, now files this supplemental response in opposition to the defendant CHESAPEAKE REGIONAL MEDICAL CENTER ("CRMC")'s Emergency Motion to Dismiss the Indictment for Lack of Jurisdiction.  ECF Nos. 45 (motion), 46 (brief), 51 (supplemental brief); *see also* ECF No. 48 (order re supplemental briefing).  The defendant's supplemental brief rests on the faulty premise that there is a defect in the indictment that requires remediation: specifically, that the indictment does not name Chesapeake Hospital Authority ("CHA"), a term the defendant uses both to refer to itself and to its governing board.  The defendant then proposes three "options" to redress this purported defect, incorrectly claiming that the government agrees that "this Court cannot proceed against CHA without doing one of three things."  ECF No. 51 at 1.

The defendant's motion should be denied.  The government incorporates herein the arguments in its previously-filed response in opposition, ECF No. 47, and at the August 5, 2025, hearing, ECF No. 49 (transcript) (herein, "Tr."), and additionally states the following:

First, as the government has consistently argued, the indictment is not defective because CHA is simply an alternate name for the same entity already named and identified in the indictment.  *See, e.g.*, ECF No. 47 at 2.  There is no dispute that the three names currently listed in the indictment—CRMC, Chesapeake General Hospital ("Chesapeake General"), and Chesapeake Regional Healthcare ("CRH")—are alternate names for the same entity as CHA.  Defendant conceded the same at the hearing, Tr. 11, and elicited sworn testimony on the same from the sole fact witness at the hearing, Tr. 82.  This is also shown by the numerous examples cited in the government's opposition brief demonstrating that "the defendant's own long term practice in multiple forums is to use all of these names interchangeably," ECF No. 47 at 4, and by the defendant having registered the names as aliases for CHA with the Virginia State Corporation Commission ("SCC"), ECF No. 46 at 3.  Notably, the defendant also used the name CRMC to execute an agreement regarding the statute of limitations with the government in this very case, in order to have further time to consider the government's proposed alternate resolution (which would not have carried the consequence of mandatory exclusion which the defendant raised at the August 5, 2025 hearing).  **Exhibit 1**.

Where a defendant uses multiple names, as here, courts are clear there is no requirement that it be indicted under any particular one of those names, or even under its actual legal name where only one exists (which is not the case here, as the defendant has registered multiple names with the SCC, including those listed in the indictment). *See, e.g.*, *Williams v. United States*, 3 App. D.C. 335, 342–43 (D.C. Cir. 1894) ("The name of a person [for purposes of a criminal indictment] is the designation by which he is known; and that may be either the so-called Christian or baptismal name, or it may be any other equivalent appellation by which the party is known or recognized in the community, or any ordinarily recognized or usual modification of such name."); *United States v. Austin*, No. 1:24-CR-162-RJA-JJM, 2025 WL 1456817, at *2–3 (W.D.N.Y. Apr. 28, 2025), *report and recommendation adopted*, No. 24-CR-162-A, 2025 WL 1455165 (W.D.N.Y. May 21, 2025) ("Aliases may be used in referring to the defendant, and, if he is known as well by one name as by another, either name may be used." (quoting *§ 7:98. Names*, 1 Orfield's Criminal Procedure Under the Federal Rules § 7:98)); *Winbrone v. United States*, No. 2:15-CR-00063-DBH-1, 2020 WL 4432363, at *4 (D. Me. July 31, 2020), *report and recommendation adopted*, No. 2:15-CR-63-DBH, 2020 WL 5045208 (D. Me. Aug. 25, 2020) ("[B]ecause the record demonstrates that Petitioner used the name charged in the indictment, the failure to include a more complete or proper legal name was not a material defect . . . ."); *United States v. Chitron Elecs. Co.*, 668 F. Supp. 2d 298, 307 (D. Mass. 2009) (denying defendant's motion to dismiss on the ground that the indictment did not correctly name corporate defendant where unchallenged evidence "show[ed] that Chitron–China has used both "Chitron Electronics Company Limited" and "Chi–Chuang Electronics Company Limited" as identifying names in its correspondence, marketing literature, and website statements"); *United States v. Winter*, 28 F.

3

Cas. 739, 739–40 (C.C.S.D.N.Y. 1876) (rejecting motion to quash indictment on the grounds that it did not use official Christian name because "'[a] person is well described by the name by which he is generally known'"). *Cf. United States v. Tunstall*, 456 F. Supp. 2d 940, 942 (S.D. Ohio 2006) (finding no jurisdictional defect in robbery indictment which omitted initials "N.A." from name of bank).

The defendant's attempt to evade indictment on the ground that it does not list one of its multiple names should thus be rejected. "[A]n indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend . . . and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citations omitted). This attempt to impose a hypertechnical pleading requirement is contrary to these notice requirements for a criminal indictment. "[T]he sufficiency of an indictment is to be reviewed practically, with a view to the indictment in its entirety, rather than in any 'hypertechnical manner.' " *United States v. Fassnacht*, 332 F.3d 440, 445 (7th Cir. 2003) (quoting *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)). *See also United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013) (rejecting defendant's attempt to impose civil pleading standards in a criminal case); *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) ("The test for sufficiency is 'not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimum constitutional standards' . . . .").

Because "[a] name is not of the substance of an indictment." *United States v. Fawcett*, 115 F.2d 764, 767 (3d Cir. 1940), courts have rejected defendants' attempts to evade charges that use even an incorrect name, so long as the government established the defendant's identity as the

4

entity or person charged. *See, e.g.*, *United States v. Nava*, 208 F.3d 223, at *1 (9th Cir. 2000) (table) (rejecting argument that court lacked jurisdiction because "[t]he government was not required to prove the true or legal name of the defendant-only that he was the person who committed the offense"); *Kaplan v. United States*, 18 F.2d 939, 943 (2d Cir. 1927) (upholding conviction of defendant erroneously named "[s]ince he was identified as one connected with the fraudulent scheme" at trial); *Cabasquini v. New Haven Police Dep't*, No. 3:19-CV-01873 (JAM), 2019 WL 6726399, at *1 (D. Conn. Dec. 11, 2019) ("If there is probable cause to support the arrest of someone for committing a crime, the Constitution does not require that the police use the person's correct name."). Here, the indictment amply complies with these minimal requirements, and is sufficient to apprise the defendant that it was subject to indictment, as shown by the defendant's repeated appearances in this case.

The defendant points to a statement in a government brief, filed months after the indictment, that "CHA is not a named defendant in this case." ECF No. 51 at 6. However, as the defendant elsewhere argues, what controls is the language of the indictment itself. *Id.* at 2. In any event, not only was this statement a correct description of the indictment's caption, it also accurately reflects the defendant's own consistent representations and descriptions of CHA as the governing board of CRH (the successor entity to CRMC). *See* https://chesapeakeregional.com/about-us/chesapeake-hospital-authority (last visited Sept. 8, 2025). The defendant uses the name CHA in two respects: *both* as one of the names for itself, and to refer to its governing board, and the government's statement used the term in this latter context. It is clear, however, from the 25-page brief in which this isolated statement appeared that the government clearly intended to charge the entity itself, as it would otherwise have

5

disputed that the Enabling Statue and any potential sovereign immunity flowing therefrom applied to the defendant in the first instance.

Second, even if there were a defect in the indictment resulting from the omission of CHA, the proper remedy is for the Court to amend the indictment by correcting a misnomer, not to dismiss the indictment.  *See* ECF No. 47 at 7–8; *see also, e.g.*, *United States v. Young Brothers, Inc.*, 728 F.2d 682, 693 (5th Cir. 1984); *United States v. Stewart*, 7 F.3d 228 (4th Cir. 1993) (unpublished); *United States v. Wilson*, No. CR 08-263-KHV, 2010 WL 11505685, at *13 (D. Colo. Oct. 14, 2010); *United States v. Campbell*, 235 F. Supp. 94, 95–96 (E.D. Tenn. 1964). Such an amendment is allowed where it would not prejudice the defendant. *Id.* The defendant has failed to identify any potential prejudice in its briefing, and instead appears to acknowledge the absence of any resulting harm.  *See, e.g.*, ECF No. 51 at 12 & 14 (referencing "the 'absence of prejudice to the defendant in a traditional sense'"); Tr. 11 ("[O]ur argument doesn't go to notice . . . .").

"The test as to whether the defendant is prejudiced by an amendment to an indictment has been said to be whether a defense under an indictment as it originally stood would be equally available after the amendment is made, and whether any evidence the defendant might have would be equally applicable to the indictment in the one form as in the other." *Fawcett*, 115 F.2d at 767.  The defendant presents no argument in this regard; in fact, the addition of the name CHA as an a/k/a of the defendant would, if anything, bolster its asserted sovereign immunity arguments, which rely on the Enabling Statute, which in turn uses the term CHA.  Further, because the addition of additional names for the defendant would only serve to reinforce double jeopardy arguments in the (highly unlikely) event of a subsequent prosecution, "[n]ot only would

6

amending the Indictment not prejudice defendant, it would *eliminate* the possibility of prejudice resulting from the use of an incorrect name." *Austin*, 2025 WL 1456817, at *3.

The defendant argues that such amendment would create "redundancy" and "absurd" allegations in the indictment. ECF No. 51 at 9–10. Again, these hypertechnical arguments are misplaced in the context of a criminal indictment. And any potential confusion is not a result of any errors in the indictment, but instead of the defendant's own use of multiple names over time in different contexts, which practice the indictment accurately reflects. In any event, there is no apparent resulting prejudice. *See United States v. Williams*, 445 F.3d 724, 734 (4th Cir. 2006) (finding an absence of prejudice where the information was not unfairly prejudicial, the indictment was not given to the jury, and the jury was instructed that the indictment is not evidence). To the extent the Court's practice is to provide a copy of the indictment to the jury for its deliberations, if the defendant believes there is unfair prejudice that would result, it can move to redact certain portions of the indictment, or seek a jury instruction regarding its use of aliases. *See United States v. Poore*, 594 F.3d 39, 41 (4th Cir. 1979); *United States v. Clark*, 541 F.2d 1016, 1018 (4th Cir. 1976).

Third, any defect in the indictment is not jurisdictional, and thus it may also be waived. The defendant has failed to cite any case establishing that an alleged error in the defendant's name deprives the Court of jurisdiction, and the cases cited above regarding alleged naming errors imply the opposite. The cases on which the defendant principally relies, *United States v. Hooker*, 841 F.2d 1225 (4th Cir. 1988) and *United States v. Daniels*, 973 F.2d 272 (4th Cir. 1992), do not involve purported defects regarding a defendant's name, but lacking elements of the offenses charged. The cases also predated the Supreme Court's decision in *United States v.*

*Cotton*, 535 U.S. 625, 630–31 (2002).  Curtailing some courts' overly expansive approach in deeming alleged defects in an indictment jurisdictional, *Cotton* emphasized that "defects in an indictment do not deprive a court of its power to adjudicate a case."  535 U.S. at 630; *id.* (noting that an earlier decision's "elastic concept of jurisdiction is not what the term 'jurisdiction' means today").

The defendant points to the Fifth Amendment right of indictment by grand jury.  ECF No. 51 at 13; Tr. 13.  Not only has there been no deprivation of that right, given that the defendant was indicted using names concededly its own, such right is not jurisdictional and therefore waivable, as the Fourth Circuit and other Courts of Appeals have expressly held after *Cotton*.  *See United States v. Hartwell*, 448 F.3d 707, 717 (4th Cir. 2006) ("[I]f permitting [the defendant] to be charged by information were error, it was not an error that denied the district court the power to adjudicate the federal criminal prosecution."); *United States v. Brown*, 752 F.3d 1344, 1349 (11th Cir. 2014) (" '[T]he constitutional right to be charged by grand jury indictment simply does not fit the mold of a jurisdictional defect, because it is a right that plainly may be waived.' ");  *United States v. Daughenbaugh*, 549 F.3d 1010, 1012–13 (5th Cir. 2008) ("Under the reasoning in *Cotton*, because criminal defendants may waive the right to grand jury indictment, *see* Fed. R. Crim. P. 7(b), a failure to actually secure such a waiver does not affect a district court's power to hear a case.").

The defendant has waived any right it may have to indictment under the specific name CHA.  A "waiver is the 'intentional relinquishment or abandonment of a known right.' " *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  By deliberately entering an appearance and proceeding to arraignment as CRMC, and

8

thereafter entering multiple filings as the entity named in the indictment, the defendant has waived any right it has to a specific naming in the indictment (although, as previously noted, the government has no opposition to amending the indictment to correct a misnomer and moves the Court for the same). As the Fifth Circuit has held, "not pleading the misnomer waives it. The arrest and arraignment of the accused identifies him for trial, and the person so arrested and arraigned is validly convicted no matter what name is applied to him in the proceedings." *Morgan v. Aderhold*, 73 F.2d 171, 173 (5th Cir. 1934).

While the defendant has claimed its delay in raising this issue was inadvertent rather than intentional, the temporal context of this case suggests otherwise. As noted above, the parties (including the defendant as CRMC) entered into an agreement to toll the otherwise-applicable five-year statute of limitations in advance of the indictment, Ex. 1, and the indictment alleges a scheme and conspiracy through November 2019. ECF No. 1 ¶¶ 76 & 81. Notably, the defendant did not file its motion until that agreement had long elapsed. If the Court were to grant the defendant's motion to dismiss, the government requests that any dismissal be without prejudice, and that the defendant be estopped from raising a statute of limitations defense to a new indictment to preclude rewarding the defendant's potential gamesmanship in its highly delayed motion. *See, e.g.*, *Schrader v. Royal Caribbean Cruise Line, Inc.*, 952 F.2d 1008, 1013 (8th Cir. 1991) (noting that "the doctrine of equitable estoppel has been applied to prevent a defendant from relying on a limitations bar if that defendant contributed to confusion about who the proper defendant was").

**CONCLUSION**

The government submits that the Court should deny the motion to dismiss. In an abundance of caution, the government also moves to amend the indictment to correct a misnomer by adding "Chesapeake Hospital Authority" as an additional a/k/a in the party name, although it is not necessary given that the current names in the indictment all refer to the same party: the defendant.

Respectfully submitted,

ERIK S. SIEBERT
UNITED STATES ATTORNEY

By:        /s/
E. Rebecca Gantt
Virginia State Bar # 83180
Elizabeth M. Yusi
Virginia State Bar #91982
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address – Rebecca.Gant@usdoj.gov
E-Mail Address – Elizabeth.Yusi@usdoj.gov